Dorothea E. Donaldson, J.
This claim for damages for false arrest and imprisonment arose as a result of an incident which occurred on July 15, 1962.
On this Sunday afternoon in anticipation of a boating outing with his wife, son and brother-in-law, and prior to the launching of the boat, claimant directed his brother-in-law to park his car beneath the western end of Tappan Zee Bridge of the New York State Thruway on land paralleling the roadway known as Piermont Road or River Road. The curbed road and its sidewalk were not far from the boat dock used by the maintenance authorities for the bridge to moor its boats and to store supplies. The young man parked his car on the dirt area adjacent to the sidewalk and away from the macadam roadway. After he joined the party in claimant’s car, they drove downstream, parked that car at the launching site, placed the boat in the water and sailed on the Hudson River. As they were proceeding upstream under the Tappan Zee Bridge claimant noticed a tow truck near their parked car. He then beached the boat nearby. Claimant’s brother-in-law, and then the claimant, left the boat and ran up to the tow truck to which his automobile was being affixed.
When Mr. Vernusti, claimant’s brother-in-law, arrived at his car he noticed a State trooper nearby. The State trooper, Edward Van Kluyve, testified at trial that on this day it was his responsibility to patrol the Thruway area from the New York City line to Interchange No. 10 as well as the roadway under the Tappan Zee Bridge adjacent to the Thruway’s docking facilities. The completion of the entire patrol was required several times a day to prevent a recurrence of thieving and vandalism upon boats and supplies stored there. While checking the area at 2:20 p.m., that day he saw a small car parked beneath the bridge and off from the macadam roadway. After waiting approximately 15 minutes for the driver of the car to arrive and seeing no one in the vicinity he called, via radio, for a tow truck to remove this car which he had impounded. The impounding resulted from violation of posted “No Parking ” and “No Trespassing ” signs. The tow truck responded to the radio call and was removing the car at the time of arrival of the claimant’s brother-in-law.
Mr. Vernusti testified that he explained his reasons for parking to the trooper who advised him that if he paid the tow truck fee he would be permitted to remove his car without *985 further inquiry and without summons. Under protest to the tow-truck operator claimant’s brother-in-law paid the tow charge of $5. At this point, claimant appeared on the scene and attempted to argue with the tow truck driver that the amount of the charge was excessive.
Testimony revealed that claimant continued arguing, not only with the tow truck driver but also with State Trooper Van Kluyve. As a result of the argument and as a result of claimant’s attitude, the trooper advised Mr. Paccioli that if he failed to remove himself from the area he would be liable to a summons for violation of the “ No Trespassing” signs. Since claimant failed to comply, the trooper told claimant he was under arrest and grabbed him by the elbow. When Mr. Paccioli pulled his elbow away, the trooper went behind the claimant and took him by a hammerlock, walking him over to the police car. Claimant did not' resist, entered the front seat of the police car without any need for force. However, when the trooper walked away from his car, claimant attempted to leave the troop car and was stopped by a second trooper who had recently arrived. As a result of this last incident, Trooper Van Kluyve handcuffed the claimant’s hands in front of him but did not shackle them to any part of the trooper’s car.
While so seated, Mr. Paccioli called out and showed his manacled hands out of the window to the group of persons who had gathered. Shortly thereafter, claimant was brought to Grand-view Police Station where the handcuffs were removed, his rights were read to him, Trooper Van Kluyve served him with a summons, and due to his inability to then obtain counsel, he was released without bail on his own recognizance.
Pursixant to summons, a trial, in which claimant pleaded not guilty, was held before Police Judge Blooe on September 10, 1962, who found claimant guilty as charged and fined him $10. An appeal was taken from this conviction but had not been perfected at the time of trial.
The first information filed by Trooper Van Kluyve was for infraction of section 2 of article 3 of the New York State Thruway Rules and Regulations. (N. Y. Off. Comp, of Codes, Rules & Regulations [10th Supp.], p. 594.) A second information, dated July 30, 1962, which referred to a violation of the provisions of section 1 of article 4 of the New York State Thruway Rules and Regulations, was substituted for this information.
Claimant contended that the conviction was a nullity because it was based upon an invalid or illegal information since the *986 substituted information dated July 30, 19.62 was sworn to before an acting lieutenant of the State Police and was not sworn to before a Magistrate in accordance with law. The defendant maintained that this contention is not correct because the claimant had been convicted in accordance with an information upon which no appeal had been perfected.
Claimant further contended that the Police Justice was without jurisdiction of the subject matter since the violation of the “No Trespassing” signs was not specifically identified as such either in section 2 of article 3 of the Thruway Buies and Begulations, as charged in the first information, or in section 1 of article 4 of the same rules. Claimant did concede that he trespassed upon the property of the New York State Thruway in an area where “No Trespassing” signs were located. Claimant’s contentions relative to nullity of the conviction or to the jurisdiction of the Police Justice .are based on technical and narrow construction of the language of the sections cited. Claimant did not deny the guilt of trespass. This court does not construe the phraseology used in the information or the merits of the trial before the Police Justice. Mere technicality does not transpose a wrong into a right. The court, however, does determine whether the actions of the representative of the defendant, the State trooper, showed the exercise of reasonable care and prudence.
Therefore, even though the claimant has not come into this court with ‘ ‘ clean hands ’ ’, little weight is given to the conviction in the Police Court. The articles and sections of the Thruway Bules and Begulations specified in the information, as well as subdivisions d, f, g and h of section 7 of article 3 have applicability.
A failure to respect a “No Trespassing” sign or “No Parking ” sign is a misdemeanor and is sufficient for a summons or for an arrest. Other indicia of disrespect are merely cumulative. Such arrest was within the province and authority of the State trooper, was legal, and was not made without foundation.
Several questions arise, however, whether (1) there was sufficient provocation for the armed State trooper to use handcuffs on the unarmed claimant; (2) the use of the handcuffs were within both the extent of the authority of the State trooper and the scope of his responsibility since neither hazard, danger, nor inciting to riot had been shown, and (3) the use of handcuffs and their application were sufficient to constitute an actionable false imprisonment.
*987 Since members of the State Police are employees of the public they must exercise their authority with care to protect the public and to prevent infringement of the rights and privileges of individual citizens. Indiscriminate use of handcuffs is such an infringement. The attitude of an individual, argumentative words, facial expressions and appearance can be influencing factors. Defendant contended that claimant’s utterances, such as “Who’s going to arrest me?” and “Stop, oh, help me, they’re putting me in the can”, were sufficient in and of themselves to warrant the use of handcuffs.
On the other hand, the public has the responsibility to respect and obey the police power it has delegated to certain of its employees and the rules and regulations established thereunder. The Code of Criminal Procedure and the courts have recognized the extent to which a police officer may exercise restraint where the public fails to accept its responsibility. Both sections 10 and 172 of the code state, in part, the restraint exercised shall be “no more than necessary for * * * arrest and detention ’ ’. When an officer restrains an individual, he is entitled to use his judgment in every case as to whether he will handcuff a prisoner provided that he has acted reasonably, honestly and according to his best information and belief. (Houghtaling v. State of New York, 11 Misc 2d 1049; Lippert v. State of New York, 207 Misc. 632.) Actions that flowed during the heat of an episode are rarely reflected in the cool repose of the courtroom. Since no proof has been submitted to show wanton abuse of this discretion, the first two questions proposed are answered in the affirmative; the last question, in the negative.
The claim must be, and hereby is, dismissed.